Slip Op. 18- 51

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JSW STEEL LTD. AND JSW STEEL COATED PRODUCTS LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br> and <br><br> AK STEEL CORP.; STEEL DYNAMICS, INC.; CALIFORNIA STEEL INDUS., INC.; ARCELORMITTAL USA LLC; AND NUCOR CORP., <br><br> *Defendant-Intervenors*. | Before: Richard W. Goldberg, Senior Judge <br> Court No. 16-00165 |

**<u>OPINION</u>**

[Remanding the Department of Commerce's final determination.]

Dated:  May 9, 2018

*Mark D. Davis*, Davis & Leiman PC, and *Irene Huei-min Chen*, Chen Law Group LLC, of Washington, D.C., argued for plaintiffs.  With them on the brief was *Mark B. Lehnardt*, Antidumping Defense Group LLC, of Washington, D.C.

*Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, and *Nikki Kalbing*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C., argued for defendant. With them on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Elizabeth Speck*, Senior Trial Counsel.

*John W. Bohn*, Schagrin Associates, of Washington, D.C., argued for defendant-intervenors.  With him on the brief was Roger B. Schagrin, Schagrin Associates, of Washington, D.C.

Goldberg, Senior Judge:  This matter concerns the final determination issued by the

Department of Commerce ("Commerce" or the "Department") in the countervailing duty

Court No. 16-00165

("CVD") investigation of certain corrosion-resistant steel products ("CORE") from India.

*Certain Corrosion-Resistant Steel Products from India*, 81 Fed. Reg. 35,323 (Dep't Commerce

June 2, 2016) ("*Final Determination*"), and accompanying Issues & Decision Mem. ("I&D

Mem.").  Plaintiffs JSW Steel Limited and JSW Steel Coated Products Limited (collectively,

"Plaintiffs" or "JSW"), contest Commerce's use of adverse facts available ("AFA") in

connection with a JSW affiliate called JSW Steel (Salav) Limited ("Salav").  Because substantial

evidence does not support Commerce's determination, the court remands for redetermination in

accordance with this opinion and order.

## **BACKGROUND**

Commerce initiated a CVD investigation into CORE from certain countries, including

India, with a period of investigation ("POI") of calendar year 2014.  *Certain Corrosion-Resistant

Steel Products from the People's Republic of China, India, Italy, the Republic of Korea, and

Taiwan*, 80 Fed. Reg. 37,223 (Dep't Commerce June 30, 2015) (initiation).  JSW was selected as

a mandatory respondent.

As part of its investigation, Commerce issued multiple questionnaires seeking

information about JSW and certain affiliates.  Questionnaire to the Gov't of India, P.R. 69 (July

31, 2015) ("First Questionnaire"); 1st Supp. Questionnaire from USDOC to JSW, P.R. 167 (Oct.

20, 2015) ("Second Questionnaire"); *see* JSW 2nd Supp. Questionnaire Response, P.R. 206

(Dec. 16, 2015) ("Third Questionnaire").  In its First Questionnaire, Commerce requested, in

relevant part, that JSW "provide a complete questionnaire response for those affiliates where

'cross-ownership' exists"[1] and "the cross-owned company supplies an input product to you that

is primarily dedicated to the production of the subject merchandise."  I&D Mem. cmt. 11.  JSW

---

[1] It is uncontested that cross-ownership exists between JSW and Salav.

provided full responses on behalf of itself and an affiliate named JSCPL, both producers of

subject merchandise, and also on behalf of ARCL, a cross-owned producer of inputs to subject

merchandise.  *Id.*  With its response to the initial questionnaire, JSW also provided a list of 55

affiliated companies, including Salav, and indicated why full questionnaire responses were not

required for those companies.  Affiliated Companies Resp. Ex. 1, P.R. 85 (Aug. 24, 2015).  This

document stated that Salav was "not in operation" during the POI.  *Id.*

Commerce issued a supplemental questionnaire requesting, in relevant part, that JSW

provide information concerning subsidies for any cross-owned companies that "supply any

inputs to the production of CORE or to the production of other inputs to the production of

CORE."  Second Questionnaire; I&D Mem. cmt. 11.  In response, JSW explained that no

additional companies beyond ARCL fit this description.

Finally, in its second supplemental questionnaire, Commerce requested that JSW "revise

[its] questionnaire response to cover subsidies received by all of [JSW's] Indian

subsidiaries . . . or explain why [JSW] believes it is not necessary to report subsidies received by

these other divisions."  Third Questionnaire; I&D Mem. cmt. 11.  Again, JSW responded that no

additional companies were responsive to Commerce's questionnaire.  In sum, the three

questionnaires essentially sought information concerning those affiliates of JSW whose subsidies

might be attributable to JSW in this CVD investigation.

Commerce then published its preliminary determination, calculating JSW's CVD rate at

2.85%.  *Certain Corrosion-Resistant Steel Products from India*, 80 Fed. Reg. 68,854 (Dep't

Commerce Nov. 6, 2015) (prelim. determ.) ("*Preliminary Determination*"), and accompanying

Issues & Decision Mem.  After the *Preliminary Determination*, Commerce conducted an on-site

verification at JSW.  JSW Verification Report, P.R. 257 (Apr. 12, 2016).  After Commerce

Court No. 16-00165

arrived for verification, JSW informed Commerce that JSW had inadvertently and erroneously

reported that Salav had not been operational during the POI. *Id.* at 5.  On this basis, JSW had not

discussed Salav or its subsidies in response to any of Commerce's questionnaires.  However,

JSW explained that, while Salav had in fact been operational for the final two months of the POI,

questionnaire responses were still not required for Salav on the separate basis that Salav does not

produce an input responsive to Commerce's questionnaires.  JSW Case Br. 9–15, P.R. 264 (Apr.

21, 2016).

Commerce rejected JSW's representations about Salav as untimely "new factual

information" that did not qualify as a "minor correction" and that Commerce was not obligated

to verify.  I&D Mem. cmt. 11.  Commerce concluded that JSW had withheld requested

information concerning Salav, thereby impeding Commerce's investigation.  *Id.*  On these same

facts, Commerce also determined that JSW had not fully cooperated in the investigation,

warranting the use of adverse facts available ("AFA").  *Id.*

Thereafter, Commerce issued its *Final Determination*, calculating JSW's final CVD rate

at 29.46%, 81 Fed. Reg. at 35,324, 25.22% of which resulted from Commerce's use of AFA

related to JSW's alleged failure to disclose requested information concerning Salav, I&D Mem.

Sec. 5.  Plaintiffs timely filed this action to contest the CVD rate and Commerce's determination

that AFA was appropriate.

## **JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and will

sustain Commerce's countervailable subsidy determinations unless they are "unsupported by

substantial evidence on the record, or otherwise not in accordance with law," 19 U.S.C.

§ 1516a(b)(1)(B)(i).

## **DISCUSSION**

### I. Facts Available and Adverse Facts Available

Commerce "shall" fill gaps in the record using "the facts otherwise available" ("facts available") when a respondent: (A) "withholds information that has been requested by [Commerce]," (B) "fails to provide such information by the deadlines for submission of the information or in the form or manner requested," (C) "significantly impedes a proceeding," or (D) "provides such information but the information cannot be verified."  19 U.S.C. § 1677e(a)(2)(A)–(D).

Further, Commerce may use AFA, that is, it may select from the facts available in a manner adverse to the respondent, if the gap in the record was caused by the failure of the respondent to cooperate to the best of its ability.  19 U.S.C. § 1677e(b).  Thus, AFA is appropriate only when Commerce has first made a supported finding under § 1677e(a) that information is missing from the record for an enumerated reason, followed by a separate finding under § 1677e(b) that there has been a failure to cooperate.

### II. Substantial Evidence Does Not Support Commerce's Use of Facts Available

The court finds that Commerce applied AFA without substantial evidence to support the required threshold finding that there was a gap in the record warranting the use of facts available. Commerce premised its use of facts available on two grounds: JSW withheld "requested information" about Salav, § 1677e(a)(2)(A), thereby impeding the proceedings, § 1677e(a)(2)(C).  I&D Mem. cmt. 11.[2]  Quite simply, Commerce has failed to show that it requested information concerning Salav that was then withheld by JSW.

---

[2] Because common facts and arguments underlie JSW's alleged withholding and impeding, the court will combine its discussion of these two grounds.

JSW admits that its initial representation—that Salav was not operational during the POI—was false.  However, the operational status of JSW's various subsidiaries during the POI was not "requested information."  Rather, Commerce requested, in relevant part, information concerning cross-owned companies which supply an input "that is primarily dedicated to the production" of CORE, *see* First Questionnaire, or is used in the production of an input to CORE, *see* Second Questionnaire.  Therefore, whether JSW withheld requested information concerning Salav, as Commerce claims, is a function of whether evidence indicates that Salav supplied an input for the production of CORE or for the production of an input to CORE.

During verification, JSW informed Commerce that, during the final two months of the POI, Salav produced direct reduced iron, or DRI, and made a small shipment of DRI to JSW's Dolvi facility.  JSW Verification Report 5.  DRI is an input for a diverse range of products, including some products that, in turn, could be used in the production of CORE.

However, according to JSW, the Dolvi facility (i) is the only JSW facility capable of processing DRI, (ii) is incapable of producing subject merchandise, and (iii) did not send any inputs during the POI to Vijayanagar, the only JSW facility capable of producing subject merchandise.  JSW Case Br. 13–15; Hearing Tr. 33–34, P.R. 277 (May 6, 2016); JSW Am. 56.2 Mot. for Summ. J. 28, ECF No. 48 (Apr. 28, 2017) ("JSW 56.2 Mot.").  Additionally, JSW notes that "because Salav DRI was sent to Dolvi only at the very end of the POI, even some minuscule portion of that DRI was theoretically made into hot-rolled coil, which was in turned [*sic*] rolled into cold-rolled coil, and then was eventually further converted by JSW Coated into CORE, that final manufacturing step would necessarily have taken place after the POI."  *See* JSW 56.2 Mot. 28.  Moreover, JSW asserts that Commerce can corroborate this information because Commerce verified JSW's responses regarding its production process.  *See* JSW Case Br. 13–14.  Thus,

Court No. 16-00165

JSW reasons that, although DRI can generally be an input to products that are inputs to CORE,

Salav did not supply—and could not have supplied—a relevant input at a relevant time.  As a

consequence, full questionnaire responses were not required for Salav.

      Commerce does not point to any record evidence contradicting JSW's representations

concerning Salav.  Rather, Commerce insists that "JSW's belated assertion that [Salav]'s input

should not be considered as primarily dedicated to subject merchandise is unsubstantiated" and

"unreliable."  I&D Mem. cmt. 11.  But Commerce's refusal to verify, justified or otherwise, does

not constitute "substantial evidence on the record."  *See Olympic Adhesives, Inc. v. United*

*States*, 899 F.2d 1565, 1574 (Fed. Cir. 1990) ("To show that [respondent]'s responses were

incomplete, the [agency] would have to put forth at least some evidence" in support of that

conclusion).[3]  If JSW is correct that Salav did not provide an input to subject merchandise or to

relevant downstream product, then JSW did not withhold requested information about Salav.

      In arguing that information concerning Salav was in fact requested, Defendant, the

United States, notes that "[i]t is not within the [*sic*] JSW's discretion to determine what

information Commerce needed for the investigation . . . ."  Def. Resp. to Pl. Mot. for J. on

Agency R. 16, ECF No. 61 ("Def. Resp.").  This proposition is true, but misplaced here.  The

dispute between the parties is not whether certain requested information is necessary.  *See, e.g.*,

*Ansaldo Componenti, S.p.A v. United States*, 10 CIT 28, 37, 628 F. Supp. 198, 205 (1986)

(respondent was not entitled to withhold requested information on the basis that it believed the

information "could not serve as a basis for Commerce's administrative review.").  The essential

---

      [3] Compare *Ozdemir Boru San. v. Tic. Ltd. Sti.*, 41 CIT __, __, 273 F. Supp. 3d 1225,
1235 (2017) (sustaining Commerce's use of facts available and AFA in light of record evidence
discovered at verification that, contrary to respondent's questionnaire responses, respondent
"was eligible for, and did receive" a certain subsidy).

dispute is whether the information was requested at all.  In other words, while Commerce has

latitude to request a wide range of information, it is only entitled to receive what it actually

requests.  *See Olympic Adhesives, Inc.*, 899 F.2d at 1572–75 ("[A] submitter need only provide

complete answers to the questions presented in an information request.").

Defendant also insists that JSW's arguments concerning Salav are irrelevant because

Commerce is not required to trace specific inputs into specific subject merchandise.  But that is

also not the issue.  Rather, JSW's asserts that Salav-produced DRI could not have been a part of

the production of *any* subject merchandise during the POI.  Defendant has pointed to no specific

evidence casting doubt on this assertion.

Citing past practice, Defendant goes one step further and argues that JSW should have

interpreted the questionnaire to include an affiliate "even if the [affiliate's] inputs are not actually

used [to produce subject merchandise] during a given period of investigation or review."  Def.

Resp. 19.  While this may be Commerce's practice in ultimately attributing subsidies, the idea

that Commerce requested such information from JSW in this proceeding is belied by the fact that

Commerce permitted JSW to provide no questionnaire responses for certain companies—

including, initially, Salav—on the basis that those companies were "not in operation" during the

POI.  *See* Affiliated Companies Response Ex. 1; JSW Verification Report 4.  This would clearly

be an inadequate response under Defendant's theory that the POI has no limiting effect on JSW's

questionnaire responses.

Certainly JSW put Commerce in a predicament.  The eleventh hour timing of JSW's

correction concerning Salav made it difficult for Commerce to fully verify the new information.

And on this basis, Commerce refused to verify JSW's representations concerning Salav.  But the

fact remains: the essence of JSW's belated assertion is that it never withheld "requested

information" concerning Salav.  Therefore, Commerce must point to something on the record to

support its determination, under § 1677e(a), that in fact JSW withheld requested information.

Adverse inferences are not record evidence.  A desire to punish untimely corrections is not

record evidence.  Without substantial evidence that *requested* information was withheld,

Commerce was not permitted to supplement the record with facts available under § 1677e(a).

Consequently, Commerce was also not permitted to use AFA under § 1677e(b).

Because Commerce failed to support its use of facts available under § 1677e(a), the court

does not reach the merits of Commerce's determination that JSW also failed to cooperate to the

best of its ability per § 1677e(b).  The court also does not reach the arguments raised by JSW as

to the reasonableness of the CVD rate applied by Commerce.

## CONCLUSION AND ORDER

Commerce may have been entitled to refuse to verify the belated information concerning

Salav.  But that decision had consequences, namely, there is no record evidence to support

Commerce's use of facts available.  Commerce cannot cherry-pick those parts of JSW's

correction that it hopes will support the application of AFA and reject the rest as untimely.  The

record is closed on Salav.  Thus, on remand, Commerce must recalculate JSW's CVD rate

without regard to Salav.

Upon consideration of all papers and proceedings herein, it is hereby:

**ORDERED** that the *Final Determination* is remanded to Commerce for redetermination in accordance with this Opinion and Order that is in all respects supported by substantial evidence, in accordance with law, and supported by adequate reasoning; it is further

**ORDERED** that Commerce shall recalculate JSW's CVD rate without regard to Salav or any subsidies Salav may have received; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its remand redetermination, which shall comply with all directives in this Opinion and Order; that the Plaintiff and Defendant-Intervenor shall have thirty (30) days from

Court No. 16-00165

the filing of the Remand Redetermination in which to file comments thereon; and that the
Defendant shall have thirty (30) days from the filing of Plaintiff and Defendant-Intervenor's
comments to file comments.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated:  May 9, 2018
New York, New York